## CUNNINGHAM et al. v. HENRY et al.
### No. 6523.

Court of Civil Appeals of Texas. Texarkana.
June 1, 1950.

Rehearing Denied July 20, 1950.

Norman C. Russell, Atchley & Vance, Texarkana, for appellants.

Brown & Brown, Texarkana, for appellees.

WILLIAMS, Justice.

In the declaratory judgment appealed from, the trial court decreed that appellant Bruce Cunningham was not entitled to be paid by the City of Texarkana, Texas, any sum as mayor in excess of $125 per month during the remainder of his present term of office, and any sum paid in excess thereof was not authorized by law. The court further decreed that the other appellants, Ben Taylor, Perry DeMarce, Paul Blankenship, David Watts and Dan Smith, were not entitled to be paid any sum as an alderman of the city in excess of $5 for each regular meeting of the City Council and $2.50 for each called meeting actually attended by each alderman, and any sum paid in excess thereof was not authorized by law. The court further declared that the sums paid to each of the appellants in excess of above monthly salaries, the respective amounts that each had received being stated, should be returned to the City Treasurer. A substantial part of the agreed statement of facts upon which trial was had is herein indicated by quotation marks.

On September 7, 1949, and for many years prior thereto, the City Charter of the City of Texarkana contained the following provisions pertaining to the salary and compensation to be paid to the mayor and al-

dermen, comprising the city council, to-wit:

"Sec. 83. Aldermen—Compensation.—Each alderman shall receive as compensation, to be paid from the city treasury, the sum of five dollars for each regular meeting of the city council that he shall actually attend, and the sum of two dollars and fifty cents for each called or special meeting that he shall actually attend; provided, that the compensation paid shall not exceed the sum of one hundred and fifty dollars per annum for any one alderman."

"Sec. 109. The mayor shall be paid a salary, the amount of which shall be fixed by the city council, not to exceed Fifteen Hundred Dollars ($1500.00) per annum, such salary to be paid in equal monthly installments."

"Sec. 110. Duties. Said mayor shall do and perform all the duties of his office, and shall not give his time or attention or in any manner or capacity be connected with, while so in office to the management, direction or control of any public utility corporation or business whatsoever holding a permit or franchise from said city.

"He shall act as recorder and preside over the corporation court of said city, and shall do and perform all the duties required of him by this charter and the laws of the said city of Texarkana, and shall do and perform all other duties that shall be prescribed by the city council. * * *

"The said mayor shall be ex-officio chairman of the city council, and in case of a tie vote in said council he shall cast the deciding vote.

"The said mayor shall from time to time make such recommendations to the city council as he may deem proper for the welfare of the city."

The City Charter contains Secs. 47 and 48, which sections are a part of the original charter, and as agreed to by litigants in the trial, "are still in full force and effect and have not been amended." Said sections read:

"Sec. 47. Officers—Salaries Fixed.—The city council shall, on or before the first day of January next preceding elections for officers under this charter, fix and determine the salaries of all such officers who are to be elected at such election where such salaries are not fixed by the terms of this charter; and shall at the same time fix and determine all salaries for appointees and employes who hold by appointment, and whose office is to be filled by reappointment during the ensuing year next thereafter."

"Sec. 48. Officers—Salary Unchanged.—The salary so fixed and determined by said council for such officers, whether elective or appointive, shall not be increased or diminished during the term for which such officers are elected or appointed."

"On the 31st day of December, 1947, and prior to the election, when the present mayor was elected to his present term of office, the City Council met and fixed the mayor's salary at $1500.00 per year."

"On the 7th day of September, 1949, at an election duly and legally called and held in the City of Texarkana, Texas, for said purpose, Sections 83, 109, and 110 of the City Charter as it then existed, were amended by a majority vote of the people, and as amended now reads:

" 'Sec. 83. Aldermen—Compensation. Each alderman shall receive as compensation, to be paid from the city treasury, the sum of twelve dollars and fifty cents for each regular meeting of the city council that he shall actually attend, and the sum of five dollars for each called or special meeting that he shall actually attend; provided, however, that the compensation paid shall not exceed the sum of three hundred fifty dollars per annum for any one alderman.'

" 'Sec. 109. Compensation—The mayor shall receive such compensation as may be fixed by the city council.'

" 'Sec. 110. Duties.—Said mayor shall be the chief executive officer of said city and shall devote his full time and attention to the affairs of the city and shall be responsible to the council for the efficient administration of its affairs. He shall do and perform all the duties required of him by this charter and laws of said City of

Texarkana, and shall do and perform all other duties that shall be prescribed by the city council.

" 'Said mayor shall not in any manner or capacity be connected with or give his time or attention, while in office, to the management, control, or direction of any public utility corporation or business whatsoever holding a permit or franchise from said city.

" 'The said mayor shall be ex-officio chairman of the city council and in case of a tie vote in said council he shall cast the deciding vote.

" 'The said mayor shall from time to time make such recommendations to the city council as he may deem proper for the welfare of the city.'

"After said election was held, and at a special legally called meeting of the city council, the votes cast at said election were canvassed; the mayor of said city in pursuance to Art. 1173, R.C.S. of Texas, certified to the Secretary of State an authenticated copy under the seal of said city, showing an approval and adoption of said charter amendments by the qualified voters of said city; and the city secretary in pursuance to Art. 1174, R.C.S. of Texas, duly and legally recorded said amendments in a book kept for said purpose, as required by law."

"On September 15, 1949, Bruce Cunningham, the mayor, began to serve as full-time mayor, purporting to act under Section 110 of the City Charter as amended by vote of the people on September 7, 1949, and has continued to so act to the date of this trial."

"Prior to September 15, 1949, the mayor devoted only such time to the duties of his office as the duties of the office required."

"On October 25, 1949, the city council at a regular meeting, by a motion duly made, seconded and carried, voted to fix the full-time mayor's salary at $500.00 per month, and by said motion provided said salary should be retroactive to September 15, 1949; said Bruce Cunningham, the mayor, was paid such salary from September 15, 1949, to December 15, 1949; and had been paid up to December 15, 1949, $1125.00 in excess of the salary of $125.00 per month fixed by the charter, and by the city council prior to his election."

"The aldermen defendants, Ben Taylor, Perry DeMarce, Paul Blankenship, Davis Watts and Dan Smith, were elected to their present terms of office prior to the amendment of the City Charter by vote of the people on September 7, 1949, and their salaries were automatically fixed by the terms and provisions of the Charter, without any action of the council at the time of their respective elections;" and "the salary of defendants aldermen was never fixed for the years 1947 and 1948 by ordinance, resolution or otherwise than by the Charter itself."

"Each of the aldermen defendants have been paid $12.50 for each regular and $5.00 for each called special meeting attended from September 13, 1947, through November 28, 1949, each alderman having been paid $50.00 in excess of the amounts fixed by the Charter prior to the charter amendments."

It is to be observed that Secs. 109 and 110, prior to their amendment did not fix the salary to be paid the mayor. It merely placed a limit on the salary to be paid. In recognition of the provisions of Sec. 109 and in compliance with the mandatory provisions of Sec. 47, supra, the council in December, 1947, fixed the salary at $1500 per annum to be paid to the mayor elected at the next election. At this election which followed in April, 1948, Bruce Cunningham was elected mayor for a term of two years. When the salary is required to be and is timely set by the city council, as required under above record, then Sec. 48, supra, the succeeding section, applicable here, provides that *"the salary so fixed and determined by said council for such officers, whether elective or appointive, shall not be increased or diminished during the term for which officers are elected or appointed."* (Italics ours.)

Sections 47 and 48 were not repealed by the adoption of the 1949 amendments to Secs. 109 and 110 for the provisions of the amendments are silent by refer-

ence or otherwise that their adoption would repeal, change, abridge or suspend Secs. 47 and 48. "If by any reasonable construction two acts * * * can be reconciled (as here) and so construed that both may stand, one will not be held to repeal the other. * * * Where there is no express repeal, the presumption is that in enacting a new law the legislature intended the old statute to remain in operation," 39 T.J., Statutes, Secs. 75, 77 and here the new to become effective at the beginning of a new term. In the absence of repeal of Secs. 47 and 48 and by virtue of the mandatory inhibition in Sec. 48, the city council was without legal authority to increase the mayor's salary from $125 to $500 per month during the tenure of his office to which he had been elected in 1948. Grounded upon above observations, the judgment of the trial court so far as it decreed that the city was unauthorized by law to pay and the mayor to receive any sum in excess of $125 monthly is sustained.

The validity of Sec. 48 was sustained in City of Texarkana v. Floyd, Tex.Civ.App., 59 S.W.2d 449, writ refused. In City of Uvalde v. Burney, Tex.Civ.App., 145 S.W. 311, 312, in the discussion of Art. 569, now Art. 1010, R.C.S. of Texas, comparable to the provisions of Secs. 47 and 48, the court said the salary "shall not be changed during the term for which the officer was elected or appointed" and the salary so fixed prior to election was binding upon him during his term of office. Bickle v. City of Panhandle, Tex.Civ.App., 43 S.W.2d 640, 641; Brown v. City of Amarillo, Tex.Civ. App., 180 S.W. 654, writ refused; and likewise protects such officer from a reduction in his salary. City of Brownsville v. Kinder, Tex.Civ.App., 204 S.W. 446.

█ It is urged that the October, 1949, action of the city council in fixing the mayor's salary at $500 instead of $125 as originally fixed prior to election was not a raise within the inhibition of Sec. 48. It is contended that Sec. 110 prior to its amendment required only part time duties from the mayor, whereas this section after its amendment required him to devote full time in the discharge of his duties as mayor. And therefore the October, 1949 action of the city council was the fixing of a salary for a new office, namely, a full-time mayor, and was an original fixing or determination, rather than an increase in the salary because the offices were radically different, particularly the amount of time required by the amendment to be devoted by the mayor to the new office. It appears that the city council in good faith laboring under above theory fixed and the mayor accepted the $500 salary. If it be assumed that the amendment to Sec. 110 became effective as of the date of its adoption irrespective of the provisions of Secs. 47 and 48, the alleged new duties required under the amendment will not meet the rule as stated in 43 Am.Jur., p. 152, urged here, which reads: "Where the duties newly imposed upon the officer are not merely incidents of and germane to the office, but embrace a new field, and are beyond the scope and range of the office as it theretofore existed and functioned, the incumbent may be awarded extra compensation for the performance of such duties without violating a constitutional inhibition against increase of salary during the term. The rule has been applied to allow extra compensation to an officer employed outside his official duties to conduct litigation for the public, or to an officer rendering service of such a character that he is called upon to risk or give his life or incur permanent disablement. So, a health officer, unless prevented by statute, may recover reasonable compensation for extra services performed by him during an epidemic."

Sec. 110 as amended did not create a new office of mayor as here urged. Such increase in time to be devoted in the discharge of the office were incidents of and germane to the office and did not embrace a new field beyond the scope and range of the office. Laman v. Moore, Mayor, 193 Ark. 446, 100 S.W.2d 971.

█ The City Charter by its terms fixed the salary of the aldermen. Hence neither the mandatory provisions of Sec. 47 or the inhibitions specified in Sec. 48 are applicable to the determination of the effect of the amendment to Sec. 83. This section prior to its amendment provided that an "alderman shall receive as com-

pensation the sum of $5.00 for each regular meeting attended and $2.50 for each special meeting." The section as amended in September, 1949, provides that an "alderman shall receive as compensation the sum of $12.50 for each regular meeting attended and $5.00 for each special meeting."

"A new ordinance (here an amendment to Sec. 83 of the charter) which is inescapably inconsistent with an earlier one dealing with the same subject matter amends it in proportion as it introduces a change * * *." 62 C.J.S., Municipal Corporations, § 434, page 832; 62 C.J.S., Municipal Corporations, § 437. Sec. 83 as amended was the last expression of the people in this home rule city operating under Art. XI, Sec. 5, of the Constitution of Texas, Vernon's Ann.St., and its enabling statutes, Arts. 1165–1182f, R.C.S. of Texas, Vernon's Ann.Civ.St. arts. 1165–1182f, and in our opinion does not run afoul of any constitutional or statutory prohibition with respect to the change in the salary to be paid an alderman. This last expression will be given effect. 39 T.J., Statutes, Sec. 74. Hence that part of the judgment which decreed that the increase in salary paid to the aldermen was invalid is here reversed and it is here rendered that such salaries paid the aldermen were authorized upon the adoption of the amendment to Sec. 83.

Affirmed in part and reversed and rendered in part.